# In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Tony A. Fair, Jr., #Y298270, | ) Civil Action No. 9:05-1025-MBS-GCK |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF THE MAGISTRATE JUDGE** |
| Lt. Rowe, Lt. McCray, Sgt. Grant, Ofc. Kolb, Ofc. Shadeed, Ofc. Belin, and Capt. Ramano, | ) |
| Defendants. | ) |

## I. INTRODUCTION

The Plaintiff, Tony A. Fair, Jr. ("Plaintiff" or "Fair") was convicted in Richland County in 2003 for possession of a stolen vehicle and sentenced to four (4) years in prison under the South Carolina Youthful Offender Act, S.C. Code Ann. § 24-19-10 *et seq.* Plaintiff filed this action against the defendants Lt. Rowe, Lt. McCray, Sgt. Grant, Ofc. Kolb, Ofc. Shadeed, Ofc. Belin and Capt. Ramano (collectively, the "Defendants") of the Turbeville Correctional Institution, seeking damages against the Defendants based on Fair's allegations of that officers threatened him and subjected him to a series of brutal beatings while incarcerated.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

Plaintiff has admitted in his pleadings that on the evening of January 14, 2005, he directed "sexual comments and gestures" towards Officer Kolb, a female corrections officer. [26-1] According to Plaintiff, Officer Kolb and he agreed that later that evening, Plaintiff would request some Tylenol, and she would unlock his cell door, pass him the pills, and leave the door unlocked

so they could meet in a closet. [26-1] Plaintiff contends that, pursuant to the plan, he called for the Tylenol, but instead of Officer Kolb, six SCDC employees and officers approached his cell, entered it, and began to assault him. Specifically, Plaintiff alleges that Lt. Helen McCray assaulted him by punching him in the face, and then Lt. McCray instructed Lt. Rowe and Sgt. Grant to pick him up and take him to the holding cell. Plaintiff states that at the time he was being escorted to the holding cell, Lt. McCray smashed Plaintiff's head into the stairwell pole and then Lt. Rowe began to hit Plaintiff in the head and back with his radio. Plaintiff alleges he was handcuffed by Ms. Shadeed, the assault continued, and then he was taken to the holding cell where he was assaulted again. Then, Plaintiff was taken to receive medical attention from Nurse York.



In response, the Defendants agree with Plaintiff's admission that Plaintiff directed inappropriate sexual comments and gestures towards Officer Kolb. The officer-Defendants allege they attempted to perform a "shakedown" of Plaintiff's cell that evening, cell but Plaintiff became aggressive toward Officer McCray. Lt. Rowe then escorted Plaintiff from his cell to take him to a holding cell but a struggle ensued. According to the Affidavits filed by the Defendants, as Plaintiff was escorted from the wing, he became violent and pulled away from Lt. Rowe. Plaintiff then turned and struck Lt. Rowe with a closed fist, caused Lt. Rowe's face to bleed.[1] Lt. Rowe then took Fair to the ground with a straight-arm bar takedown. While Lt. Rowe and Sgt. Grant restrained Fair, officers handcuffed him.

Subsequently, Plaintiff was brought before a Disciplinary Hearing Officer ("DHO"), and the soliciting charge against an SCDC employee and the threatening to inflict harm charges were dropped. Plaintiff was charged with striking an SCDC employee, found guilty of that charge, and sentenced to ninety days in the SMU. [1-1]

---

[1] See Accident Report, attached as 20-6.

## IV. PROCEDURAL HISTORY IN FEDERAL COURT

The Plaintiff commenced this Section 1983 action on March 29, 2005,[2] alleging the Defendants used excessive force against him. Plaintiff named the following TCI personnel as Defendants: (1) FNU Rowe, Lieutenant; (2) FNU McCray, Lieutenant;(3) FNU Grant, Sargent; (4) FNU Kolb, Officer; (5) FNU Shadeed, Officer; (6) FNU Belin, Officer; and (7) FNU Ramano, Captain.

On July 15, 2005, a Motion for More Definite Statement was filed by the Defendants, requesting clarification of Plaintiff's "demand for judgment." [7-1] On July 22, 2005, Plaintiff filed his response to the Motion for More Definite Statement listing his demands, which included monetary damages and release from the Department of Corrections. [9-1] On July 29, 2005, the Defendants filed their Answers [10-1; 11-1], and on that date the undersigned also held a hearing, which resulted in the Defendants' withdrawal of their Motion for a More Definite Statement. [12-1] Plaintiff filed a copy of the Inmate Grievance Form (Step 1), which indicated that the SCDC had recommended that the punishment of a 60 day setback be removed because the SCDC was unable to locate the tape recording of the Sanctions Board's hearing on April 8, 2004 regarding the incident at issue. [13-1]



On October 6, 2005, Plaintiff filed a motion for conference hearing, a motion requesting a transcript of the DHO hearing tape, and a motion to be placed in protective custody. [17-1] An Order denying all three motions was filed on October 24, 2005. [18-1]

On November 30, an Order was issued instructing the Defendants to file their dispositive motions. [19-1] On December 12, 2005, the Defendants filed a Motion for Summary Judgment and a supporting Memorandum, along with various exhibits which included an affidavit by Gwendolyn Shadeed, the Inmate Grievance Forms, Reports on the Use of Force forms, Plaintiff's

---

[2]  Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his Complaint. [4-1]

disciplinary records, and other documents relevant to the action. [20-1; 20-2; 20-3; 20-4; 20-5; 20-6] Thereafter, on December 13, 2005 the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the Motion for Summary Judgment. [23-1]

In response, on January 6, 2006 Plaintiff filed a Motion requesting that Ms. Shadeed be ordered to take a polygraph test. [24-1] This motion was denied on January 11, 2006. [25-1] Thereafter, on January 12, 2006, Plaintiff filed his response in Opposition to the Defendants' Motion for Summary Judgment. [26-1] Accordingly, this matter is ripe for review by the undersigned.

## V. THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendants' Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):



> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "once a

plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'" *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 (1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI. DISCUSSION

### A. Exhaustion



As a threshold matter, the court must address whether Plaintiff has exhausted the available administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle,* the United States Supreme Court held that "the PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. 516, 532 (2002). However, the exhaustion requirement is an affirmative defense which the defendants have the burden to plead and prove. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir.2005).

In the present case, the Defendants raised Plaintiff's failure to exhaust as an affirmative defense in their Answers but they did not move for summary judgment on this basis. Of course, the "[d]efendants may . . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures." *Stenhouse v. Hughes*, — F.Supp.2d —, 2006 WL 752876 at *2 (D.S.C. March 21, 2006), *citing Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). As Judge Herlong noted in *Stenhouse*, "[a]dditionally, exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." *Stenhouse*, — F.Supp.2d —, 2006 WL 752876 at *2, *citing Abney* 380 F.3d at 667.

In the present case, it is not clear to the court whether Plaintiff exhausted his administrative remedies prior to filing suit, and the Defendants have not argued this issue as a basis for summary judgment. Therefore, the court is led to conclude that Defendants have conceded this point, and the court will turn its attention to Plaintiff's allegations in this case.



### B. Whether the Officers utilized excessive force given the *de minimis* nature of any injuries to the Plaintiff

Plaintiff claims that he was brutally beaten and subjected to "power-blows," his head was smashed into a stairway pole; and he was beaten in the face and back with a radio. However, he has no injuries to show for this alleged abuse. As mentioned above, immediately following his removal to a holding cell, Plaintiff was examined in TCI's medical section. Significantly, as Nurse Flora York-Laraque's "Post Use of Force Examination" note explains, no injuries to

Plaintiff were noted during the medical exam conducted after the alleged altercation between Plaintiff and the Defendants. Nurse York-Laraque noted that Plaintiff had "no bruises or discoloration" nor "any obvious injuries" and instructed him to take some Tylenol because he claimed he had a headache.[3] Clearly, in light of the *de minimis* nature of any alleged injury, Plaintiff's excessive force claim is patently without merit.

"An excessive force claim generally should not lie where any injury sustained by the plaintiff is *de minimis*." *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994), *cert. denied*, 513 U.S. 1114 (1995). In *Norman*, the plaintiff alleged that an officer hit his hand with brass keys causing great pain and swelling as well as loss of partial use of his right hand and residual pain for three years. The court found plaintiff's injury to be *de minimis*, noting that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Likewise, while "[t]he due process clause protects a pre-trial detainee from 'the use of excessive force that amounts to punishment,'" (*United States v. Cobb*, 905 F.2d 784-788 (4th Cir. 1990) (*citations omitted*), absent the most extraordinary circumstances, excessive force claims do not lie where the injury *is de minimis*.

Since Plaintiff sustained no serious or significant injury, his claim is not cognizable under 42 U.S.C. § 1983. As *Graham v. Connor*, 490 U.S. 386 (1989), explains, "not every push or shove by a state actor can rise to the level of a violation of constitutional rights." The Fourth Circuit has observed:



> Punishment must mean something more than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged 'push or shove' would entitle plaintiff to a trial. This is no idle concern. Those in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution, however, does not exist to scoop up every last speck of detainee discontent. To hold that every incident involving contact between an officer and a detainee

---

[3] See the "Post Use of Force Examination" report completed by Nurse Flora York-Laraque, the SCDC Health Services System SOAP note completed by Nurse York-Laraque, and the 23:57 "seen" notation on the McCray "Report on the Use of Force."

creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

In the present case, the force used by the officers attempting to restrain Plaintiff appears appropriate from the evidence in the record, and the resulting "injury" to Plaintiff (his alleged headache) clearly was *de minimis*. *See also Taylor v. McDuffie*, 155 F.3d 479 (4th Cir. 1998) (even if there were a genuine issue of material fact as to whether officers behaved maliciously or sadistically after need for force had subsided, pretrial detainee failed to show that injuries allegedly resulting from "jabbing" of a kubaton into detainee's nose and mouth were more than *de minimis*; no medical treatment was required or prescribed for any such injuries and medical records did not support the injuries that the detainee purported to have received). *See also Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002) (where pretrial detainee did not suffer more than *de minimis* physical injury during his confinement, the PLRA barred his Section 1983 claim for mental or emotional injury); *Gavin v. Ammons*, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994) [Table] (guard's pulling of inmate's hair was *de minimis* force); *Calabria v. Dubois*, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994) [Table] (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280-81 (8th Cir. 1994) (keys swung at inmate which slashed his ear was *de minimis* force); *Jackson v. Pitcher*, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992) [Table] (guard's stomp on the hand of inmate was *de minimis* force), *cert. denied*, 506 U.S. 1024 (1992); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, a brusque order to an inmate and poking the inmate in the back was *de minimis* force); *see also Roberts v. Samardvich*, 909 F.Supp. 594 (N.D.Ind. 1995) (grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was *de minimis* force under the circumstances); *McMiller v. Wolf*, 1995 WL 529620 (W.D.N.Y. August 28, 1995) (snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was *de minimis* force); *Crow v. Leach*, 1995 WL 456357 (N.D.Cal. July



28, 1995) (corrections officer's pushing inmate into chair causing his shoulder to break window behind him was *de minimis* force); *Jackson v. Hurley*, 1993 WL 515688 (N.D.Cal. November 23, 1993) (blow to back of neck with forearm and kick to the ankle of inmate were *de minimis* force); *DeArmas v. Jaycox*, 1993 WL 37501 (S.D.N.Y. February 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (corrections officer's punching inmate in arm and kicking inmate in leg was *de minimis* force); *Olson v. Coleman*, 804 F.Supp. 148, 150 (D.Kan. 1992) (single blow to head of handcuffed inmate was *de minimis* force); *Candelaria v. Couglin*, 787 F.Supp. 368, 374-75 (S.D.N.Y. 1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force), *aff'd*, 979 F.2d 845 (2d Cir. 1992); *Neal v. Miller*, 778 F.Supp. 378, 384 (W.D.Mich. 1991) (backhand blow with fist to the groin of inmate was *de minimis* force); *Ramos v. Hicks*, 1988 WL 80176 (S.D.N.Y. July 25, 1988) ("bent wrist come-along hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y. 1988) (corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was *de minimis* force).



Applying these cases to the facts at hand, it is clear that Plaintiff's injuries were *de minimis*, and thus the Defendants did not violate any of Plaintiff's constitutional rights. Defendants are entitled to summary judgment as to Plaintiff's excessive force claims.

### C. Defendants are Entitled to Qualified Immunity

Furthermore, the Defendants in this case are entitled to the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

### D. This Action Should Constitute a "Strike"

Finally, Section 804 of the PLRA, amended § 1915(g), and reads as follows: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any

facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Based upon the foregoing, it appears dismissal of this action should be characterized as frivolous, malicious, and failing to state a claim upon which relief may be granted, and should be designated as a "strike" under the PLRA.

## RECOMMENDATION

For the aforementioned reasons, it is recommended the Defendants' Motion for Summary Judgment **[20-1] be granted**, and the Clerk directed to count this action as a "strike" pursuant to 28 U.S.C. § 1915(g).

George C. Kosko
United States Magistrate Judge

April 17, 2006

Charleston, South Carolina

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must** *specifically identify* **the portions of the Report and Recommendation to which objections are made** *and* **the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate**

> judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *** We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
